WILLIAMS *v.* STOLZENBACH and others.

*(Circuit Court, W. D. Pennsylvania. February 6, 1885.)*

1. PATENTS FOR INVENTIONS—APPARATUS FOR OBTAINING AND WASHING SAND.
   Letters patent No. 206,514, for an improvement in apparatus for obtaining and washing sand, granted July 30, 1878, to David C. Williams, construed, and *held* to be limited to a combination having as one of its elements a vessel of water in which the screen is immersed, and therefore not infringed by defendants' apparatus, the screen of which works in the unconfined water of the river.

2. SAME—CONSTRUCTION OF CLAIMS.
   It is beyond the province of judicial construction to eliminate from a claim an explicitly declared constituent of a combination merely because it is in fact unnecessary in effecting the desired result.

In Equity.

*D. F. Patterson,* for complainant.

*George H. Christy,* for respondents.

ACHESON, J. The plaintiff's invention relates to apparatus for obtaining and washing sand, and, as described in his specification and illustrated by the accompanying drawings, consists of a cylindrical riddle or screen, D, "the lower portion of which is immersed in a vessel of water," C, through which riddle or screen and vessel flows a stream or currents of water, in combination with an ordinary dredging-boat having elevators for supplying the interior of the screen with unwashed sand, a receptacle, F, for receiving the washed sand, and elevators for removing it therefrom. As the screen rotates, the sand becomes separated from the coarser materials by the revolving movement, and passing through the meshes drops into the vessel, C, from which it is removed and thrown into the receptacle, F, by means of

wings or projecting longitudinal flanges attached to the outside of the screen. The specification states that the riddle or screen, D, in its "construction and operation," is substantially the same as that described in a previous patent, granted April 23, 1867, to David Furnier. That this is so, is evident upon comparing the two patents; and it may be added that in the Furnier apparatus the cylindrical screen is provided with exterior wings or longitudinal flanges like those above mentioned, and performing the same function. The vessel, C, and the receptacle, F, are partly sunk below the surface of the stream in which the dredging-boat is operating, and the inflowing supply of water to the vessel, C, (to take the place of that swept out of it with the washed sand) is obtained by means of openings or holes in the side of the vessel below the water-line. Of this feature of the apparatus the specification thus speaks:

"The riddle or screen, D, is placed in a vessel, C, into which is constantly flowing through openings, $x$, currents of water, whereby the lower portion of the riddle, D, is always immersed in water, and a current of water is constantly flowing through the riddle, thereby keeping the meshes of it clean."

There are four claims. The first is as follows:

"A screen or riddle immersed in a vessel of water, and through which is flowing a stream of water, in combination with an ordinary dredging-boat for supplying the said screen with unwashed sand, substantially as herein described, and for the purpose set forth."

The second claim is for the same combination, with the addition of elevators for supplying and charging into the interior of the screen unwashed sand. The third claim is for the same combination as the second, with the addition of a receptacle for receiving the washed sand and elevators for conveying it therefrom. In each of these claims occurs the language, "a cylindrical screen immersed in a vessel of water." The fourth claim is for the combination of the screen, D, the vessel, C, the receptacle, F, two elevators, and four designated chutes.

It is quite clear to me, from the descriptive portion of the specification, that the inventor regarded it as essential to the desired end that the water in which the screen rotates should be segregated by an inclosing vessel. The riddle or screen, he instructs us, is to be *"placed in a vessel into which is constantly flowing, through openings, $x$, currents of water,"* etc. He perhaps thought that unless the water was thus cut off from the body of the stream the sand would be washed out of the screen by the action of the natural current, or by reason of the agitation of the water. But with his conjectures we need not concern ourselves. It is enough that by his explicit language, "a riddle or screen immersed in a vessel of water," is a constituent of the several combinations claimed. *Tate* v. *Thomas,* 30 O. G. 345; S. C. 22 FED. REP. 660.

Now, indisputably, the defendants' screen is not immersed in a vessel of water, nor placed in any vessel whatsoever. On the contrary,

it rotates and performs its work in the open river. The defendants, therefore, do not use the plaintiff's patented invention, unless the immersion of the screen directly in the river is the same thing as its immersion in a vessel containing water let in from the river by means of the openings described in the plaintiff's specification, or other equivalent means. But who will affirm this? It is in vain to urge that, the use of a vessel being, in fact, unnecessary, the claims should be read as if they called broadly for the immersion of the screen in the water of the river. To eliminate what is a plainly declared element of a combination is beyond the province of judicial construction. *Water-meter Co.* v. *Desper*, 101 U. S. 332. Besides, from first to last, the specification contains no hint that the inclosing vessel could be dispensed with, and I think it manifest that it had not occurred to the inventor that the screen could successfully perform its work in the open stream. It is, indeed, true that underneath the defendants' screen there is a pan or vessel which catches the screened sand. Their screen, however, is not immersed or placed therein, but rotates and does its whole work above it, in the unconfined water of the river. The outside wings move therein, but they are no part of the screen, and their work is distinct from and follows the screening.

The prior state of the art here was such that the plaintiff's claims were necessarily very narrow. Dredging and sand-washing boats equipped with cylindrical screens, elevators to feed the screen, receptacles to hold the washed sand, and elevators to carry it away, were old. How much the plaintiff borrowed from Furnier we have already seen. Moreover, Furnier's first claim calls for a hollow screen revolving on an axis, with one portion always immersed in a vessel, through which a stream of water constantly flows from some convenient reservoir. Now, what more has the plaintiff done than devise his vessel, C, with sides raised above the water-line so as to embrace the screen, and provided with its water-supply openings? Within the restricted limits of his claims, his patent may well stand; but, as the defendants do not use the plaintiff's vessel, or any equivalent therefor, they do not infringe his rights.

Let a decree be drawn dismissing the plaintiff's bill, with costs.